This matter is U.S. v. Freeman. Good morning, your honors, and may it please the court. My name is Renee Petropalo, and I represent the appellant Montez Freeman. With the court's permission, I'd like to ask three minutes for rebuttal. Okay. You know, Ms. Freeman, if I were to try to explain to someone who wasn't fluent in the English what the expression winning the battle and losing the war means, I would put a picture of Montez Freeman on a postcard and send it to them and say, this is winning the battle but losing the war. Even if you're right in everything you're arguing legally, which is not our job to decide the second part of the question, isn't it pretty obvious that the discretionary review is going to allow me to get exactly the same sentence I mean there? I agree that it's possible the court could do that because absolutely the court has the discretion. But I do disagree that that's a fait accompli. I believe we have a strong argument that had the district court not been burdened by the erroneous facts, as he saw them at the time, that he could have fully considered the purpose for the 35, or excuse me, for the two drugs minus two amendment, as well as the policy statements behind that amendment. The policy statements clearly state that you're to replace the 2D1.1 drug level and leave everything else in place. At the time the party's court. It was the 2003 pre-sentence report. The 2003 pre-sentence report, those crimes, those convictions would still be there. Those convictions would still be there. The 2003, but you're saying the 2004 one would not be there? Is that what you're saying? I'm saying his offense level would have been in 2013 21 and not 23. So it would have been 60 to 71 as opposed to 70 to 87. Yes. And so the parties at the time completely agreed that this was a mid-guideline range sentence. The guidelines were appropriate. The only thing that has changed is that we now know that that guideline was unfairly high because it was tied as it was to the mandatory minimums. We have the commission's expert testimony now that it was unfairly too high and that we should rectify that situation by granting this modest 2-level exemption. At the end of the day, there's still the 355-3A factors that the court has to consider. Correct, Your Honor. The court has already said that if I were to do that, I'm not going to change my sentence. The court considered the 355-3A factors the first time around and said the mid-guideline sentence was sufficient but not greater than necessary to achieve the purposes of sentencing. Well, you said you got a break initially. You said he could have been possibly sentenced under a mandatory minimum, right? Yes, the 851 had. The error is the court's understanding that this was an 851 case and the record belies the idea that this was ever an 851 case. And I say that for two reasons. The United States attorney in a pretrial conference affirmatively represented that he was not going to file an 851 unless the defendant a week before suppression hadn't entered a plea. So we know that the plea, with the agreement to forego the 851, wasn't conditioned on whether the guideline was 21 or 23. It was, was he going to enter a plea? This was never an 851 case. We also know that because if you look at the reply the government filed. I'm sorry, there was the potential for doing that. Certainly there was a potential, but there was a potential in a great many cases. But the government follows procedures in determining when an 851 is appropriate. And here it said on the record the 851 was not appropriate. Justice Sotomayor in the plurality opinion talks about, yes, the government's free to argue that the two-level reduction would result in a windfall. But for that, for it to be a windfall in this case, the government would have to show that it would not have agreed to forego the 851 if it realized the guideline was 21 and not 23. And we have a statement from the government to the contrary. They were going to not file the 851, whether the guidelines were 21 or whether they were 23. And in the reply to the 3582, the government never once talks about the 851, the not filing of it being a dispositive factor. On the jurisdiction issue, how do we deal with the initial concession by the government? The concession amounts to waiver. The only way to get around the waiver is if it were a jurisdictional question. And I believe Wetherspoon answers that question. This Court in Wetherspoon looked to the Supreme Court's most recent line of cases on the question of jurisdiction, and it said it's up to Congress to articulate when something's jurisdictional and when something's not. If it doesn't clearly say so in the statute, courts aren't to suppose that a statutory eligibility requirement is jurisdictional. And the Supreme Court in the case that Wetherspoon cites, it's Yarborough v. Ryan H., is very critical of courts who sort of use jurisdiction in a small J, not capital J. Yeah, the funny thing is, Yarborough or whatever came out in 2006, and since then you've got, what, five circuits saying it's jurisdictional and four circuits, I guess the 2nd, the 7th, the 11th, and the D.C. circuit, saying it's not jurisdictional, and you're arguing that Wetherspoon agrees with that. It seems like we've got to, this is right for the Supreme Court ultimately to resolve who's right, who's wrong. Well, I think the Supreme Court has said who's right and who's wrong in Yarborough because they've said. Well, the point is you've got, if Arbaugh is 06, the 5th circuit is Garcia from 10, the 6th circuit is Williams from 10, the 8th circuit is Allman from, well, that's 93, the 9th circuit is Austin from 12, and the 10th circuit is Graham from 13. So post 06, at least four circuits are saying, we've looked at it again, we think it is jurisdictional. We have Taylor from. . . You've got Taylor from the 7th circuit, and Judge Hamilton wrote a really good opinion. Yes, Anderson, 11th circuit, Johnson, 2nd circuit, but more than that. You've got the 7th, the 2nd, the D.C., and so 2nd, 7th, 11th, and D.C. More than that, we have Wetherspoon where the court indicates that unless Congress specifically says this is jurisdictional as opposed to this is a statutory eligibility claim, then we're not to suppose from Congressional silence that it is jurisdictional. Did Wetherspoon definitively decide it is a holding? It's guidance for this court. Yes, it may look like we declined to infer a jurisdictional limitation. In Colbert-Thompson, the court also said that the eligibility requirements, that the court in the first, second, or third paragraph said the district court had jurisdiction in terms of the power to adjudicate even if the defendant wasn't ultimately eligible for relief. I realize we were dealing there with a different amendment, but it was the same issue, 1B.1.1. Does it bar relief? Let's assume the government has waived this issue and it's not jurisdictional. Do you really think this plea agreement was based on the guidelines? I do, Your Honor. They don't give a guideline range in there. They mention the guidelines. I'll concede that. But there's no mention of a guidelines range. There's no statement that this is in the mid-range. Actually, technically, it's not mid-range. It's the upper range. What makes you think that this 11C with the C agreement was based on the guidelines? Here's why, Your Honor. The agreement provides the sentencing guidelines will be considered. It lists the amount of drugs. It says 100 to 400 grams and clarified this stipulation is for purposes of 2D1.1 of the guidelines. It says the defendant gets minus 3 for acceptance. It says no other enhancements, departures, or variants are applicable or appropriate, which means no other enhancements. We can get 26 from the amount of drugs minus 3. We're at 23. It then said the agreement sets forth the full. Where are you in the plea agreement that says that? No other enhancements, you mean, Your Honor? That's at C3 of the plea agreement, that paragraph. C3 on page 4, okay. Stipulate and agree that the appropriate sentence in this case is seven years. Eighty-four months and that that sentence is within the guideline range. So offense level 23 and 84 months takes us to criminal history category 4. The agreement is very clear. Wait a minute. Let's go back to 3. Pursuant to C, the parties stipulate and agree that the appropriate sentence is seven years. The term of the supervised release of four years is fine. If any did be determined as special assessment. Okay, it does say this sentence is within the guideline range. Okay, got it. Yeah, and then at the bottom of paragraph 3 on appendix 104, the last paragraph, the parties further agree that no other enhancements, departures, or variances are applicable. So that's the decree of hunger. That's any other specific offense level characteristics. And why this is different from Weatherspoon is Weatherspoon had drug amount like this case does, but then they said 120 months. If you look at the drug amount, you look on the table for where you are with drug amounts, not a single sentence at any criminal history category gets you to 120 months. That's why there was no tying of the sentence to the guidelines in Weatherspoon. This case is very different. It's evident from the agreement that the party's intent was to tie the sentence to the guidelines level. Once the guidelines were reduced, Mr. Freeman was eligible for a reduction under 3582. But you agree that we can only look at the four corners of the agreement. And that all is from the four corners of the agreement, Your Honor. I mean, if we were going to look elsewhere, we'd look at the statement of reasons where the court explicitly says offense level 23, criminal history category 4, guidelines range 70 to 87. That's in the statement of reasons itself, which was entered the same day as the plea. Thank you. Thank you. Thank you. Is that how you pronounce your name for me again? I'm sorry. Pietropalo. Pietropalo. Okay, thank you. I'm not sure you're right. That's a very good argument. May it please the Court. My name is Michael Lively. I'm an assistant U.S. attorney from Pittsburgh. Good morning, Your Honors. Good morning. Can I just ask you at the outset, you asked us to consider the argument that the sentence wasn't based on the guidelines, but in response to Mr. Freeman's motion initially, the government stated that, quote, the United States agrees that this court has the discretion to reduce the defendant's sentence to 68 months imprisonment. That's a JA-96. That's absolutely correct. Isn't that unless it's jurisdictional, that's a waiver, right? It's a waiver. It's a forfeiture unless it's jurisdictional. And then if it's jurisdictional, Mr. Pietropalo says that, yes, there is a circuit split, but Witherspoon lines up with those circuits to say it's not jurisdictional. Actually, in 2009, in United States v. Doe, 564 Fed 300, page 305, this court held or stated that a defendant's failure to satisfy the first two prongs under 3582C, if I quote, if a defendant fails to satisfy both requirements, a district court lacks jurisdiction to consider a sentence reduction. So this court What did we do in that case then? That case was concerned with Did we affirm or dismiss? I believe what was involved in that case was whether or not defendants who were sentenced under, pursuant to a 5K or a 35B, and then their guidelines were reduced, what was the applicable guideline range. But then there is this statement saying that if you don't satisfy the first two prongs, there's no jurisdiction to consider that. Did we affirm that case? I believe so, Your Honor. Or did we dismiss the case? Because usually when you dismiss Yes. It was dismissed. If I may. The decision of the district court was affirmed in that case. Usually when there's no jurisdiction we dismiss. Well, that would be because the defendants didn't qualify or didn't satisfy the first two prongs of 3582C, at least in respect to that matter. I mean, what the language is, and I think it wasn't affirmed, in providing that the sentence reductions may be consistent with applicable sentence commission policy statements, 3582C2 creates a jurisdictional bar to sentence modification when a retroactive amendment does not have the effect of lowering this guideline sentence. Number one, that could be distinguished. So it also looks, based on what happened, based on Judge Chirica's question, that's dicta. And you might want to call that a drive-by jurisdictional statement, but it's not a holding. I understand. And if it was a holding, Witherspoon wouldn't have indicated the other way. Well, Witherspoon did cite to Doe. Now, I would note that Doe was superseded, but that dealt with an amendment to how the sentencing commission defined the applicable guideline range. But when I saw that language, I took that. I mean, that was one of the cases that I encountered whenever I was reviewing this matter. And I know that my position is diametrically opposite to the one we raised in the district court, which was the court does have the discretion to consider the motion. And upon review, I don't think that that was right. We made a mistake. But the best, I think, that can be said is that, from your perspective, that Doe and Witherspoon are in tension with each other. Yes. Not in tension. I think that they do complement each other because under Doe, you have to look at the first two prerequisites. And if you satisfy those, it is the court has jurisdiction. One of the first prerequisites is that the sentence has to be based on the guideline range, and Witherspoon explains what the analysis is to determine how a sentence is based on the guideline range within the context of Rule 11C1C. But if there's no jurisdiction, let's go back to Judge Stryka's question. How could you affirm in Doe rather than dismiss procedurally? And keep in mind, Judge Aldersert taught civil procedure for many years. That's true. That's true. My first oral argument that I ever attended in the Third Circuit was 1979. And the person got up, there was a panel that I had Judge Aldersert on it, and this poor person was grilled on civil procedure matters, never got to the merits, and he was so shot full of holes that if he had taken a drink of water while at the podium, it would not have reached his tummy. Okay. He was tough. And rightfully so. I have argued in front of him before, too, as well. So I do not have a good answer at this point to Judge Stryka's question, and I do apologize for that. Again, maybe I misread the statement in Doe looking at that as a definitive statement of jurisdiction, but I still think that if we are going to get to the issue of how Taylor affects all this, that's the Seventh Circuit case. Noting that there does appear to be something of a split at this point, I think there are a number of reasons why Taylor is not correctly decided. And if I may enunciate what those are, Your Honors. Keep in mind, Taylor has company. Yes, it does. In the Second Circuit, the Eleventh Circuit, and the D.C. Circuit. That's true. It does. It does. The issue is whether or not the requirements of 3582 are not jurisdictional, but whether they're akin to a claims processing rule. And if they are subject to a claims processing rule, they are subject to waiver and forfeiture, obviously. I think that's inconsistent with the Supreme Court's decision in the United States versus Dillon. And Dillon, Justice Sotomayor, described and explained the scope and the nature of the relief afforded by 3582C, and she stated that it applies only to a limited class of prisoners, namely those whose sentence was based on a sentencing range that was subsequently lowered by the commission. I think that by treating this requirement, 3582C, as a claims processing rule, Taylor greatly expands the class of defendants for whom 3582C is intended. What does Dillon do with it? Maybe I'm confused on this, but was there a finding or something akin to a finding that, in fact, Mr. Freeman was not a career offender? And that's problematic, because I don't mean was not in terms of official process for making him that. Well, in this case, the designation of career offender occurs in the post-supplement report. That was prepared after the sentencing hearing because Mr. Freeman... But that's another problem. Right. But my issue, and recently they asked me a question, is that Dillon would suggest that if that finding was made, it can't be revisited. District Court stated that Mr. Freeman was a career offender when it evaluated the nature of the Rule 111C when it was exercising its discretion, as it is permitted to do so, in determining whether or not further relief... In this sentencing proceeding or after that? That was done in the District Court's memorandum of opinion denying the motion for relief under 3582C. It was after he looked at the career prisons report, though, isn't it? That's correct, and that was after Mr. Navarro, who represented Mr. Freeman, cited to that very report on two separate occasions in the counsel motion for 3582C. So to the extent that Mr. Freeman is now faulting the District Court for relying on a document that he introduced into the mix, I think we're looking at the concept of... Although he seemed to think it was... he misstated what the document was. I'm sorry, Your Honor? He misstated what the document was. He thought it wasn't a... He said it was a pre-sentence report. It was not, because when you look at page 6 of the pre-sentence report and you look at page 6 of the supplemental report, they match up. And they were the ones who introduced that into the mix, and I don't think the District Court was obligated to look at only the good stuff in that report. I think it was obligated to look at everything in the report, because that was injected into the mix by Mr. Freeman in the first instance. And I don't think it's really... But if the Court can only look at 03, you really can't take into account something that happened in 04, can you? Well, you have to take that into account, because the reason why Mr. Freeman is there in 2013 is because of the 04 conviction. How so? Because he's seeking relief from the 04 conviction, the drug conviction. I thought it was the 11 conviction that we're talking about. He was sentenced in 03, 04, and 11. And 11. And what we're talking about is the sentencing in 11 that's before us today, right? Right. That's correct. That's correct. But the 04, there's no getting around it. He was a convicted drug felon in 04, and he had an aggravated assault conviction in 04. That qualifies him as a career offender. So if this case were to go back, you're thinking that somehow he could be sentenced as a career offender? No. We reached an agreement in this case of seven years' imprisonment. There's no getting of – we can't do something like that, say he's a career offender, after we agree to a seven-year sentence. That's inappropriate. Well, that was a throwaway statement by Judge McBarry here. He got a great deal, because he could have been sentenced as a career offender. He could have been sentenced as a career offender, but for the plea agreement. Now, the plea agreement in this case was very beneficial to Mr. Freeman. Not only was he permitted to plead to a lesser-included offense that carried with it a lower mandatory minimum, he was not sentenced as a career offender. He was not subject to a 2185 notice enhancement, which would have increased the sentence from five to ten years if it was a mandatory minimum. So it was a good deal. And, you know, in the Freeman decision, the court said that a court can consider the benefits that a defendant received in an 11C1C plea agreement in determining whether or not further relief is warranted under 3582C. May I ask you, was Mr. Freeman entitled to notice or opportunity to object to any new information considered by the district court in the 3582C2 proceeding? I don't think that there was new information in this case. Now, I know that there is case law indicating that if a sentence on remand, that if there is going to be truly new information, such as post-conviction rehabilitation, maybe infractions while he was in prison, matters along that line, that that information is subject to the adversarial process. But I don't think that applied in this case, because there really was no new information. And in cases that we've had so far, and you're down to the defendant's benefit, and those are the post-sentencing rehabilitation efforts, where the issue hasn't come up because the judge wouldn't want to know about that and the defense attorney is going to try to make sure that the judge knows about it. And just as that would happen in that situation, if the guy is breaking all the rules, fighting with other prisoners, engaging in infractions, the government, I would imagine, in that scenario, would also want to bring that to the district court's situation. So in that situation, we're dealing with what would truly be new evidence, not evidence that was extant whenever the pre-sentence report was prepared or whenever sentencing occurred, but truly developments, factual developments that occurred post-sentence, while incarcerated. And, you know, if someone wants to bring the good, then the government would be entitled to bring the bad in that situation. I mean, doesn't that bring – I'm trying to figure out how Dillon plays into all this, because at the re-sentencing or the subsequent sentencing, the 3553A fact is still applied. You've got to look at that. It guides discretion. And to the extent you look at that and reach a different factual conclusion on any of those factors, I don't know how that works with Dillon saying you can't alter a factual finding. Well, as I understand Dillon, whenever – I think Mr. Dillon wanted a completely – almost a de novo re-sentencing hearing based upon the limited authority granted by 3582C. And this court said no, it's only to lower the guidelines to see, you know, if it's consistent with that. I mean, this is a limited grant of authority. You know, when you look at 3582C, it was created in connection – or it was developed during the Sentencing Reform Act in 1984. And one of the purposes of that act was to curtail, to limit in cabin, the discretion that judges had over sentences. You know, back before the Sentencing Reform Act, the district court could revisit a criminal sentence months after the fact and reduce it if it thought it had been too harsh. I mean, it could suspend sentences. It could also set presumptive parole dates. And 3582C, 3582, as a whole, is intended to cabin and curtail that. So, you know, Justice Sotomayor said this is only a limited form of relief. It is a limited exception to the rule of finality. I think she used terms like that, limiting terms, maybe 11 or 12 times in the Dillon opinion, saying that this is a very, very circumscribed situation here. You're only entitled in this case – well, I'm not going to say not in this case, but defendants who would otherwise qualify, not Mr. Freeman, would get a two-level reduction. That's it. Nothing more, nothing less. And you have to look at the 3553A factors in determining whether or not the exercise of discretion would be warranted. Now, in connection with that, if the defense wants to bring information saying, you know, he's taking classes, he's working as a chef, he's a trustee, that's great. And if the government wants to bring information saying, oh, he was just convicted for importing heroin, having his girlfriend smuggle heroin into prison, we could do that as well. That information should, I think, be subject to a vetting or an adversarial process. But information that exists beforehand, no. It's already – there's no need to make sense. And in this case, you know, again, it's Mr. Freeman who injects the post-sentence report into everything in the first instance. By mistake. What? Sort of by mischaracterizing. He thought it was – Pre-sentence. He thought it was pre-sentence. I know, I know. We don't know that. This whole case is like a law school exam on sentencing. You know, when we were moving this, that's exactly – somebody mentioned that. And I hope I did better here than I did in law school. But if there are any – Well, first of all, both of us would have been smart enough in law school not to take the course. But if I could revisit Taylor for just one moment, please. Sure. You know, I know that we're talking about R-bar, and if I pronounced that correctly, in the clearly states test. There's a subsequent case. I think it's Reed, 70A, which was also written by Justice Thomas, in which he states that, you know, when a statute is not clearly labeled as jurisdictional, the relevant inquiry is whether it imposes a limitation that can be properly ranked as jurisdictional in nature absent. And you have to look at it in context. And I think when you look at the limited type of relief afforded by 3582C in connection with Dillon, as well as with the reason why the statute exists in the first place, which is to cabin a district court's discretion to revisit a sentence to actually, you know, this court should hold, if it already is not inclined to do so on the basis, though, that the requirements of 3582C to our jurisdictional in nature and not a rules-making type of situation. Thank you, Your Honors. Thank you. Our position, of course, is that Mr. Freeman wasn't a career offender before and he's not a career offender now, but that's not the question that's before this court. He agrees that's not the question. Right. I mean, the question is, is it 84 or something, potentially less than 84? And I sort of, maybe I'm sort of ending where Chief Judge McKee started, is, yeah, if we send it back, and the judge has already said that if he were to exercise just the 3553A factors, he's going to get 84 months. Again, the court made that statement burdened by his incorrect factual findings. Actually, every defendant in this case got a guideline-range sentence, and every defendant, only the principals pled guilty to the one kilogram. Everybody else essentially pled guilty to the lesser amount, including Mr. Freeman. They all were sentenced to within guideline-range sentences, and the principal of this conspiracy actually got a 3582 reduction. So the idea that the court is necessarily going to say, 3553, I'm not going to give him any more, I think that we're getting ahead of ourselves. Any less you mean? I'm sorry, Your Honor. You mean any less? Yes, any that he would do something at a remand. I do think it's important to say the court's error here is in finding that this, again, was a career offender sentence. When we talk about abusive discretion, we talk about findings that are based on no evidence. Here, it's not just that there's no evidence. The evidence contradicts the idea that he's a career offender, and I say that because the only reference to career offender comes in the supplemental report prepared for the BOP two months after sentencing. And it's not just buried in the report. It's in parentheses in paragraph 22 where he says this guy's a career offender, but he didn't get a career offender sentence. In the normal course of things, when you're having a sentencing and the probation officer says this guy's a career offender, he's got two controlled substance offense convictions. No, but I think Mr. Ivers already conceded that they made the deal. Maybe he could have been sentenced as a career offender, but that's irrelevant for today. Correct. There's no evidence. So if there's no evidence and it's an abusive discretion, we need to get it back to the district court for him to make that determination. In every other case, he looked at the 3553A factors and found that a guideline sentence, mid-guidelines, was sufficient but not greater than necessary. If he knows that we're presented with a lower guidelines, there's every indication he's going to do the same thing, which is what he did in the principle of this conspiracy's case. He reduced, as far as he could, to the mandatory minimum 120 months that applied in Mr. Green's case, the co-defendant. I'd just like to point out one final fact, and that is that Mr. Freeland has served approximately 57 months, including good time, and our position is we'd be asking if this court were to remand it to Judge McVeary, we'd be asking for a 64-month sentence. So I'm just pointing out the timeline that's involved here. So you're trying to tell us to get an opinion out quickly? Only if it's a favorable opinion. Thank you. Well done. Well done. Thank you very much. We're very excited. We thank you both. And we take the matter into the right hands.